**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2264-20

NOREEN FLUGGER and
MARGARET HAYES,

     Plaintiffs-Appellants,

v.

A&A RIDGEWOOD
REGISTERED PROFESSIONAL
NURSES ASSOCIATION, JANET
KELLY, JANET DOBBS,
KATHLEEN BISI, LUCILLE
HAUBNER, and MEYERSON,
FOX, MANCINELLI & CONTE,
P.A.,

     Defendants-Respondents.

_____

Submitted March 9, 2022 – Decided June 23, 2022

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-7546-19.

Asatrian Law Group, LLC, attorneys for appellants (Martin V. Asatrian, of counsel; Jeffrey Zajac, on the brief).

Meyerson, Fox, Mancinelli & Conte, PA, attorneys for respondents (Andrew P. Bolson and Matthew M. Nicodemo, on the brief).

PER CURIAM

Plaintiffs Noreen Flugger and Margaret Hayes appeal from an order granting defendants' summary-judgment motion. Plaintiffs do not challenge the motion judge's conclusion that plaintiffs' claims were barred by the entire controversy doctrine. We agree with the judge's conclusion and affirm.

I.

We discern the facts from the summary-judgment record, viewing them in the light most favorable to plaintiffs, the parties who opposed summary judgment. See Richter v. Oakland Bd. of Educ., 246 N.J. 507, 515 (2021) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

Defendant A&A Ridgewood Registered Professional Nurses Association, Inc. ("A&A") is a New Jersey non-profit organization, founded in 1992 by twelve registered nurses.[1] According to its bylaws, A&A's purpose is to

---

[1] This is the name of the organization according to its bylaws; thus, we use that name at the outset. We note in some submissions and documents in the record,

"promote the excellence of independent and private professional nursing practice," to "elevate the professional status of the registered nurses engaged in independent and private nursing care," to "educate the community at large as to the benefits of independent and private professional nursing care," and to "encourage the closer cooperation of nurses specializing in independent and private nursing care with other health care professionals and providers." Defendants Janet Kelly, Janet Dobbs, Kathleen Bisi, and Lucille Haubner (collectively, "individual defendants") are members of A&A.

Plaintiff Noreen Flugger was a "[f]ounder" member, trustee, and employee of A&A. According to A&A's bylaws, a founder member is someone who was named in the roll call of a June 24, 1992 meeting and whose status may be terminated for good cause by a majority vote of the founder members. At an August 23, 2018 meeting, a majority of A&A's founder members voted to revoke Flugger's membership and remove her as a founder member and a trustee. Flugger was also employed by A&A as a clinical coordinator. According to an October 11, 2018 letter from Dobbs to Flugger, a majority of the founder members at an October 10, 2018 meeting discussed whether A&A needed two

the organization is referred to as "A&A Ridgewood Registered Professional Nurses Association" or "A&A Ridgewood Registered Professional Nurses Assoc."

A-2264-20

clinical-coordinator positions given A&A had received only one request for private duty nursing during the past four months and voted to eliminate the position she held as one of two clinical coordinators.

Plaintiff Margaret Hayes was a founder member of A&A. She was not removed as a founder member and her membership was not revoked. According to defendants, Hayes was an active volunteer for A&A. Hayes testified she was never employed by A&A.

On or about July 30, 2018, plaintiffs filed a complaint in the Chancery Division (the "Chancery Action") against A&A, Kelly, and Dobbs, alleging, Kelly and Dobbs, who were then the president and treasurer of A&A, respectively, had managed A&A without regard to its bylaws and that the defendants had "provided a payment from corporate funds to Ramapo College without the requisite authorization," had failed to provide "timely and complete tax information" to A&A's "members," and had allowed unqualified people to vote, resulting in "continual and long-term non-compliance with applicable statutes . . . as well as commercially accepted practices." Plaintiffs sought a return of the Ramapo College payment, a freeze of A&A's assets, the appointment of a receiver, a presentation of an accounting of A&A's finances, and counsel fees.

After discovery was conducted, the defendants moved for summary judgment in the Chancery Action. The same attorney who signed the complaint in this case participated on behalf of plaintiffs in the oral argument of the defendants' summary-judgment motion in the Chancery Action. During oral argument, he advised the Chancery judge he had contacted the Equal Employment Opportunity Commission and said "we filed charges against A&A for the wrongful termination of a W[-2] employee. And that's Noreen Flugger." On April 5, 2019, the Chancery judge granted the defendants' motion for summary judgment and dismissed the complaint with prejudice. Because plaintiffs had not refuted the defendants' statement of undisputed facts, the Chancery judge concluded the defendants had complied with A&A's bylaws and the Ramapo College payment was authorized. The Chancery judge acknowledged plaintiffs' allegation that Dobbs and Kelly had mismanaged A&A's affairs "without regard for the bylaws" but believed "such issues are not the subject of this action," which focused on the allegation concerning the Ramapo College payment. Nevertheless, the Chancery judge found:

> However, even if this case was about the alleged mismanagement of [A&A] by Ms. Dobbs and Ms. Kelly, [p]laintiffs fail to raise any genuine issue of material fact that would warrant denial of the [summary-judgment m]otion. [Plaintiffs' expert's] report does not support the assertion that Ms. Kelly and

5

> Ms. Dobbs [sic] mismanagement harmed [A&A]. [The] report states . . . "I did not see an expense that was questionable" . . . [and] he found, "no irregularities" . . . . [Plaintiffs' expert] concluded . . . "it is my opinion that Janet Kelly and Janet Dobbs were not involved in the misappropriation of funds from [A&A]." Thus, [p]laintiffs' own expert fails to support the claim that Ms. Dobbs and Ms. Kelly harmed [A&A].

The Chancery judge granted the motion and dismissed the complaint with prejudice but denied the defendants' fee application.

Plaintiffs filed the complaint in this action on October 29, 2019, naming as defendants A&A, the individual defendants, and a law firm, Meyerson, Fox, Mancinelli & Conte. On November 8, 2019, before defendants answered, plaintiffs filed an amended complaint in which they alleged twelve causes of action: defamation, asserting defendants generally had defamed them and Kelly particularly had defamed plaintiffs by making statements during board meetings that impugned their reputations; intentional and negligent infliction of emotional distress, asserting defendants had belittled plaintiffs during meetings and, in particular, that Kelly had intentionally caused Flugger emotional distress by her conduct during meetings and by wrongfully discharging Flugger and retaliating against her for filing the Chancery Action and had caused Hayes emotional distress by engaging in "abusive and marginalizing behavior"; wrongful

6

discharge, claiming defendants had retaliated against Flugger for filing the Chancery Action and had "effectively wrongfully discharged" Hayes, who, according to plaintiffs, was "still gainfully employed as Secretary of A&A"; violations of the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -50, based on a retaliation claim, specifically alleging retaliatory actions against Flugger, a hostile work environment claim, and an age discrimination claim; harassment as to Hayes; "whistleblower," asserting plaintiffs were retaliated against for pointing out improper activities and unlawful conduct; legal malpractice, breach of fiduciary duty of loyalty, and promissory estoppel against the law-firm defendant, claiming the firm had given Kelly negligent legal advice to terminate Flugger; and a "conspiracy to commit a tort and other wrongdoings."

On December 18, 2019, defendants moved to dismiss the amended complaint, contending plaintiffs' claims were barred by the entire controversy doctrine and that plaintiffs had failed to state a claim on which relief could be granted. In a January 16, 2020 order, the motion judge granted the motion as to all counts concerning the law-firm defendant and as to the defamation and emotional-distress counts, finding those two counts were barred by the entire controversy doctrine.

7

Discovery concluded on November 19, 2020. On November 20, 2020, plaintiffs moved for the judge's recusal. The judge denied the motion in an order dated December 18, 2020.

Defendants moved for summary judgment on January 28, 2021. The judge granted the motion and dismissed the case with prejudice in an order and written opinion issued on March 22, 2021. The judge held the entire controversy doctrine required the dismissal of the case, finding the doctrine applied because "the controversy which forms the factual nexus of the instant action also was at the heart of the previously filed Chancery Division action." In addition, the judge held plaintiffs' causes of action failed as a matter of law. As to the individual defendants, the judge found "no legal basis for which individual liability may attach." The judge cited N.J.S.A. 15A:5-25, which provides "members of a nonprofit corporation shall not be personally liable for the debts, liabilities or obligations of the corporation." Recognizing a corporate officer "can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort," Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 303 (2002), the judge held "no torts have been committed by A&A or by any of its members or officers. Had tortious acts been committed, however, such acts would also be barred by the entire controversy

doctrine." The judge reasoned the alleged defamation by Kelly had occurred prior to the initiation of the Chancery Action, which was why the judge previously had dismissed that claim. Based on Flugger's testimony, the judge concluded the claims against Dobbs were premised on actions she allegedly took as A&A's treasurer and "[i]ssues about Ms. Dobbs' management of the finances of A&A were raised in the previous Chancery Action and cannot serve as a basis for imposing individual liability in this matter." Citing Flugger's testimony that Haubner was named as a defendant because she had voted unanimously with the other members and had announced how she was voting before the elections, the judge found "no basis in law or fact that could impose liability on Ms. Haubner for voting in accordance with her capacity as a [f]ounder [m]ember." The judge found plaintiffs had sued Bisi "on the theory that she used A&A funds for personal purposes." He held plaintiffs had failed to substantiate those accusations and that "[n]otably, if [p]laintiffs believed Ms. Bisi misused A&A's funds, it appears that such acts were committed prior to the initiation of the [p]laintiffs' prior action."

Plaintiffs filed a notice of appeal on April 16, 2021, stating in the notice they were appealing the March 22, 2021 order granting summary judgment. On appeal, plaintiffs contend the judge committed reversable error in denying their

recusal motion in the December 18, 2020 order. Plaintiffs also argue the judge erred in granting defendants' summary-judgment motion because material facts were in dispute. Plaintiffs reference specifically only Flugger's NJLAD retaliation claim, contending a material fact exists as to whether defendants' basis for terminating Flugger was pretextual. Plaintiffs do not dispute or make any argument about the judge's finding regarding the application of the entire controversy doctrine.

II.

We review a grant of summary judgment de novo, using "the same standard that governs the motion judge's" decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018). When "facts relevant to the application of the entire controversy doctrine are not in dispute," the determination of whether the doctrine applies is a question of law, which we review de novo. Higgins v. Thurber, 413 N.J. Super. 1, 6 (App. Div. 2010), aff'd, 205 N.J. 227 (2011); see also Pareja v. Princeton Int'l Props., 246 N.J. 546, 554 (2021) ("In questions of law, be it common law or a statute, our review is de novo."). In our review, we owe "no special deference" to the motion judge's legal analysis. RSI Bank, 234 N.J. at 472.

We note at the outset we review "only the judgment or orders designated in the notice of appeal." 1266 Apartment Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 459 (App. Div. 2004); see also Kornbleuth v. Westover, 241 N.J. 289, 298-299 (2020) (same). An appellant who does not designate an order in a notice of appeal as being the subject of the appeal "has no right to our consideration of th[at] issue." 1266 Apartment Corp., 368 N.J. Super. at 459. In their notice of appeal plaintiffs did not designate the December 18, 2020 order denying the recusal motion as a subject of this appeal. Therefore, we decline to consider that issue and address the only order plaintiffs referenced in their notice of appeal: the March 22, 2021 order granting defendants' summary-judgment motion.

We affirm the order granting summary judgment because we agree with the motion judge that plaintiffs' claims in this case were barred by the entire controversy doctrine. We note plaintiffs failed to address whether or how the judge had erred in applying the entire controversy doctrine. Accordingly, plaintiffs waived that argument. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived"); Matter of Gloria T. Mann Revocable Tr., 468 N.J. Super. 160, 180 (App. Div.

11

2021) (same). Nevertheless, we address the entire controversy doctrine because it was the primary basis of the order on appeal.

The entire controversy doctrine is codified in Rule 4:30A, which provides in relevant part: "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . . ." "The purpose of the doctrine is to prevent piecemeal decisions, promote fairness to the parties, and advance the goal of judicial efficiency." Sklodowsky, 417 N.J. Super. at 655. The doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009) (quoting Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 15 (1989)); see also Bank Leumi USA v. Kloss, 243 N.J. 218, 227 (2020). The doctrine "seeks to impel litigants to consolidate their claims . . . whenever possible." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019) (quoting Thornton v. Potamkin Chevrolet, 94 N.J. 1, 5 (1983)).

"When a court decides whether multiple claims must be asserted in the same action, its initial inquiry is whether they 'arise from related facts or the same transaction or series of transactions.'" Id. at 109 (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)). "It is the core set of facts that provides the link between distinct claims against the same parties . . . and triggers the requirement that they be determined in one proceeding." Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015) (quoting DiTrolio, 142 N.J. at 267-68). "The doctrine does not mandate that successive claims share common legal issues in order for the doctrine to bar a subsequent action." Dimitrakopoulos, 237 N.J. at 109.

However, "the entire controversy doctrine 'remains an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases.'" Bank Leumi USA, 243 N.J. at 227 (quoting Dimitrakopoulos, 237 N.J. at 114). In that regard, "a court should not preclude a claim under the entire controversy doctrine if such a remedy would be unfair in the totality of the circumstances and would not promote the doctrine's objectives of conclusive determinations, party fairness, and judicial economy and efficiency." Dimitrakopoulos, 237 N.J. at 119.

We hold that the entire controversy doctrine applies and bars plaintiffs' claims. This case and the Chancery Action are premised on plaintiffs' allegations of mismanagement of A&A, misuse of A&A's funds, and wrongful voting. We perceive no equitable basis preventing the application of the doctrine. Plaintiffs do not dispute they were aware of the existence of the claims they made in this case during the pendency of the Chancery Action. See Dimitrakopoulos, 237 N.J. at 99 (a party can avoid application of the doctrine "by proving that he or she did not know, and should not reasonably have known, of the existence of the claim during the pendency of the [prior] action"); DiTrolio, 142 N.J. at 273-74 (the doctrine "does not apply to unknown or unaccrued claims"). The record also established that plaintiffs would have had "a fair and reasonable opportunity to have fully litigated" all their claims in the Chancery Action. Dimitrakopoulos, 237 N.J. at 99 (quoting Gelber v. Zito P'ship, 147 N.J. 561, 565 (1997)). That plaintiffs did not name Bisi and Haubner in the Chancery Action does not defeat the application of the doctrine given the nature of the claims against them and their material interest as A&A members in the Chancery Action. See DiTrolio, 142 N.J. at 268 (finding defendants named in second suit had a sufficient interest in first suit to "mandate joinder of

those defendants in that suit").  Plaintiffs could have and should have brought their claims in one case.

Given that the judge correctly granted defendants' summary-judgment motion and dismissed the case with prejudice based on the entire controversy doctrine, we need not reach plaintiffs' remaining arguments.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2264-20