THOMAS THORNTON, APPELLANT, v. POTAMKIN CHEVROLET
AND ROBERT NITABACH, RESPONDENTS.

Argued April 18, 1983—Decided July 18, 1983.

1

2

Barbara A. Bell argued the cause for appellant (*Owens, Banks and Williams*, attorneys).

Richard M. Naness, a member of the New York bar, argued the cause for respondents (*Frederick A. Onore*, attorney).

Susan L. Reisner, Deputy Attorney General, argued the cause for Division on Civil Rights (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *Mary Ann Burgess*, Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

O'HERN, J.

This appeal requires us to resolve whether a discharged employee who has failed to raise a claim of discrimination in a grievance arbitration may pursue that claim before the State Division on Civil Rights. We hold that the entire controversy doctrine does not preclude the Division on Civil Rights from enforcing the provisions of the Law Against Discrimination, *N.J.S.A.* 10:5–1 to –38, and reverse the judgment below.

## I.

In April 1977, Potamkin Chevrolet moved its business from Newark to Morristown. Plaintiff Thornton had been an employee for approximately 16 years. He and other Potamkin employees were represented by Local 259, United Automobile Workers of America. When the union was notified that many Newark employees would not be retained after the move, it commenced negotiations with Potamkin on the effects of the move and possible severance pay. Thornton, one of those scheduled to be laid off, was a member of the union's negotiating

team. The parties negotiated an agreement that would have given Thornton $2,000 severance pay and $1,700 in accrued benefits. Thornton refused to sign a release accepting the award and in May 1977 asserted his right to a job at Potamkin's new Morristown facility. Thornton, who is black, claimed that two white employees were given preference over him.

The union filed a grievance on his behalf, which was submitted to arbitration. The arbitrator held that by negotiating for severance pay and other benefits, Thornton waived any right under the collective bargaining agreement to claim an improper layoff. Thornton's majority representative did not raise the issue of racial discrimination in the arbitration proceedings that preceded the award of August 24, 1977. On May 6, 1977, Thornton filed an administrative complaint with the New Jersey Department of Law and Public Safety, Division on Civil Rights, alleging Potamkin had discriminated against him because of his race. The Division determined that probable cause existed to proceed but refused to prosecute Thornton's claims for reasons unrelated to the discrimination claim. It referred the matter to the New Jersey Office of Administrative Law for disposition as a contested case under *N.J.S.A.* 52:14F–1 to –11. The Administrative Law Judge ruled that "the single controversy doctrine should be extended to arbitration proceedings" and ordered dismissal of the complaint. The agency adopted her ruling. The Division noted Thornton raised no exceptions to the Initial Decision of the Administrative Law Judge.

Thornton appealed to the Appellate Division. Because of the similarity of issues in *Teaneck Bd. of Educ. v. Teaneck Teachers Ass'n,* 94 *N.J.* 9 (1983), also decided today, we certified the cause directly on our own motion. 91 *N.J.* 569 (1983).

II.

In *Aetna Ins. Co. v. Gilchrist Bros., Inc.,* 85 *N.J.* 550 (1981), this Court extensively reviewed the development of the entire controversy doctrine as it had evolved from the creation of the single court of statewide jurisdiction, empowered to grant

legal and equitable relief "so that all matters in controversy between the parties may be completely determined." *N.J. Const.* (1947), Art. VI, § III, par. 4. The doctrine is one of "firm judicial policy which seeks to impel litigants to consolidate their claims arising from a 'single controversy' whenever possible." *Alfone v. Sarno,* 87 *N.J.* 99, 113 (1981). The essence of that policy is the joinder of claims and not parties. *Aetna,* 85 *N.J.* at 558. *See generally* Comment, "The Entire Controversy Doctrine: A Novel Approach to Judicial Efficiency," 12 *Seton Hall L.Rev.* 260 (1982).

■ The entire controversy doctrine is not applicable here because there is no comparability between private contractual arbitration and court or administrative adjudications. The doctrine presumes forums of equal jurisdiction. The Division on Civil Rights is unlike the identical forum of entire jurisdiction contemplated by the single controversy rule. The Division offers a plenary hearing (rather than a limited arbitration), a focus on the individual (rather than the representative claim), and an agency as factfinder particularly sensitive to the disposition of the claim. Moreover, the function of the arbitrator and the agency head are fundamentally different. In the private sector the arbitrator cannot consider the public interest except as the provisions of the parties' contract direct. In contrast, the Legislature has specifically entrusted the administrative agency with the duty to fulfill a statutory mandate in accordance with particularized rules of practice and procedure it shall develop. In addition, the Division on Civil Rights has remedial powers far beyond those of an arbitrator. *Terry v. Mercer Cty. Freeholder Bd.,* 86 *N.J.* 141, 158 (1981); *Jackson v. Concord Co.,* 54 *N.J.* 113, 126–27 (1969).

Although our Court has recognized that principles of judicial administration, such as the entire controversy doctrine, have an appropriate role in the administrative process, *Hackensack v. Winner,* 82 *N.J.* 1 (1980), we have stressed the paramount role of the agency head to implement public policy, *In re Kallen,* 92 *N.J.* 14 (1983).

> [I]n applying such court-based precepts [*res judicata,* collateral estoppel, entire controversy rule] to administrative agencies, their potential for achieving sound results must be tempered by a full appreciation of an administrative agency's statutory foundations, its executive nature, and its special jurisdictional and regulatory concerns. [*Winner,* 82 *N.J.* at 29].

The public interest in enforcement of the Law Against Discrimination persuades us that the entire controversy doctrine should not preclude the Division on Civil Rights from considering Thornton's discrimination claim.

> Our Court has repeatedly emphasized the strong public policy of New Jersey against employment discrimination. In *Jackson v. Concord Company,* 54 *N.J.* 113, 124 (1969) (racial discrimination in housing), we encouraged effective agency enforcement action "in order to eradicate the cancer of discrimination." In *Peper v. Princeton University Board of Trustees,* [77 *N.J.* 55, 80 (1978)] (alleged sex discrimination against a female employee), we observed that "New Jersey has always been in the vanguard in the fight to eradicate the cancer of unlawful discrimination of all types from our society." And, in *Goodman v. London Metals Exchange, Inc.,* 86 *N.J.* 19, 30–31 (1981), we found that "[t]he Legislature has given the Law Against Discrimination a special niche in the legislative scheme.... The law is aimed at fulfilling provisions of the state constitution guaranteeing civil rights. *N.J.S.A.* 10:5–2." [*Andersen v. Exxon Co.,* 89 *N.J.* 483, 492 (1982)].

We find an important analogy in *Alexander v. Gardner-Denver Co.,* 415 *U.S.* 36, 94 *S.Ct.* 1011, 39 *L.Ed.*2d 147 (1974), which held that a proceeding to enforce a discrimination claim under Title VII of the Civil Rights Act of 1964 would not be foreclosed by a previous unsuccessful labor arbitration of the claim.

> We think, therefore, that the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance arbitration clause of a collective-bargaining agreement and his cause of action under Title VII. The federal court should consider the employee's claim de novo. The arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate. [*Id.* at 59–60 39 *L.Ed.*2d at 164–65].

The facts of that case are similar to the present case. Alexander's collective bargaining agreement contained a "no discrimination" in hiring clause and a broad arbitration clause with multistep grievance procedures leading to a decision that was to be "final and binding upon the Company, the Union, and any employee or employees involved." *Id.* at 42, 94 *S.Ct.* at 1016, 39

*L.Ed.*2d at 154. Alexander specifically raised the claim of racial discrimination in the grievance. However, prior to the arbitration hearing he had filed a charge of racial discrimination with his state Civil Rights Commission. That agency referred the complaint to the federal Equal Employment Opportunity Commission (EEOC). The arbitrator found that Alexander had been "discharged for just cause." *Id.,* at 42, 94 *S.Ct.* at 1017, 39 *L.Ed.* 2d at 155. After the arbitrator's decision, the EEOC determined that there was not reasonable cause to believe that a violation of Title VII had occurred. Alexander then pursued his statutory right in the United States District Court. That court dismissed his action, holding that he had elected the remedy of arbitration, was bound by the arbitrator's decision and was thereby precluded from suing his employer under Title VII.

The Supreme Court reversed the Court of Appeals' affirmance. The Court reasoned that by submitting his grievance to arbitration an employee agrees to arbitrate *only* his contractual rights under a collective bargaining agreement. In a Title VII proceeding he asserts statutory rights guaranteed to him by Congress. In the Court's view "the relationship between the forums is complementary since consideration of the claim by both forums may promote the policies underlying each." *Alexander,* 415 *U.S.* at 50–51, 94 *S.Ct.* at 1020–1021, 39 *L.Ed.*2d at 159. *See also W.R. Grace & Co. v. Local Union 759, Internat'l Union of United Rubber Workers of America,* —— *U.S.* ——, ——, 103 *S.Ct.* 2177, 2186, 76 *L.Ed.*2d 298 (U.S.1983) ("the conciliation process of Title VII and the collective bargaining process complement each other, rather than conflict").

We agree with that policy with respect to enforcement of New Jersey's Law Against Discrimination.[1] *Cf. Terry v. Mercer Cty. Freeholder Bd.,* 86 *N.J.* 141, 151 (1981) (the unique role of our Law Against Discrimination constitutes a "statutorily created exception" that modifies statutory policies set forth in the

---

[1]The Attorney General has cited in his *amicus* brief recent amendments to *N.J.S.A.* 34:13A–5.3 that reinforce this conclusion. These amendments state:

civil service laws, *N.J.S.A.* 11:1–1 to 11:28–3). We also agree that complementary jurisdiction does not mark the "death knell" for grievance of discrimination claims. *Alexander,* 415 *U.S.* at 54, 94 *S.Ct.* at 1022, 39 *L.Ed.*2d at 162. Although we recognize that there is an element of unfairness in making the proceeding "merely one inning of the whole ball game," *Wm. Blanchard Co. v. Beach Concrete Co., Inc.,* 150 *N.J.Super.* 277, 294 (App.Div.), certif. den., 75 *N.J.* 528 (1977), in the vast majority of cases, grievance proceedings may resolve misunderstandings and often will resolve the entire dispute in a swifter, simpler and less costly proceeding.

██ Though not binding on the state agency, the arbitrator's decision should be received in evidence and accorded such weight as is appropriate. The arbitrator's decision should be given the weight that these factors suggest: what evidence was considered; what procedures were employed to test credibility; whether the hearing was informal and casual; whether the award was brief and cursory or detailed; whether a well-reasoned formal award was intrinsically persuasive. *See Mitchell v. National Broadcasting Co.,* 553 *F.*2d 265, 269 (2d Cir.1977); *Rios v. Reynolds Metals Co.,* 467 *F.*2d 54, 58 (5th Cir.1972); Note, "Judicial Deference to Arbitrators' Decisions in Title VII Cases," 26 *Stan.L.Rev.* 421, 431 (1974).[2]

██ In sum, the single controversy doctrine expresses a judicial policy that when a matter is presented to a judicial forum, the litigants should not fractionalize their claims to the detriment of the system. That policy should not preempt the Legis-

---

"The procedures agreed to by the parties may not replace or be inconsistent with any alternate statutory appeal procedure...." *L.*1982, *c.* 103, § 1. The Legislature deleted the amendment that would have required an employee to elect between remedies. *Id.* The parties neither briefed nor argued the effect of the amendments and we do not base this decision upon them.

[2]We recognize, as the Supreme Court has, that should an arbitration award be reduced to judgment in a judicial proceeding, other considerations arise. In *Kremer v. Chemical Construction Corp.,* 456 *U.S.* 461, 102 *S.Ct.* 1883, 72 *L.Ed.*2d 262 (1982), the Court held that 28 *U.S.C.A.* § 1738 required a federal

lature's choice of forum to vindicate the public interest in enforcing our Law Against Discrimination.

We therefore hold that the failure to assert a claim of discrimination in a grievance proceeding will not preclude the presentation of that claim to the State Division on Civil Rights.

## III.

■ We hold that, although of evidential value, neither failure to present nor unsuccessful prior submission of a discrimination claim to an available arbitration process provided in a labor agreement will foreclose an employee's statutory right to present the claim to the Division on Civil Rights.

We reverse the judgment below.

*For reversal* —Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For affirmance* —None.

court to give full faith and credit to a state court judgment finding no discrimination. *See also Grace,* —— *U.S.* at ——, 103 *S.Ct.* at 2186 (allowing enforcement of arbitration award that does not inappropriately affect public policy; although "the conciliation process of Title VII and the collective bargaining process complement each other rather than conflict," company cannot restrain arbitration).