**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1920-19

GLENMORE MANAGEMENT,
LLC, and 955 RTE 22W, LLC,

      Plaintiffs-Appellants/
      Cross-Respondents,

v.

RIS CONSTRUCTION
CORPORATION and
BLAGOJ PEOVSKI,

      Defendants-Respondents/
      Cross-Appellants.

_____

RIS CONSTRUCTION
CORPORATION and
BLAGOJ PEOVSKI,

      Third-Party Plaintiffs-
      Respondents/Cross-Appellants,

v.

FOX ARCHITECTURAL
DESIGN, P.C., BOWMAN
CONSULTING GROUP, LTD.,
OMLAND ENGINEERING

ASSOCIATES, INC., and
FRONTIER ENGINEERING
SERVICES, LLC,

      Third-Party Defendants/
      Respondents.

_____

Argued October 4, 2021 – Decided November 1, 2021

Before Judges Sabatino, Rothstadt and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0858-18.

Joseph A. DiPisa, III argued the cause for appellants/cross-respondents Glenmore Management LLC and 955 RTE 22W, LLC (Beattie Padovano, LLC, attorneys; Joseph A. DiPisa, III, of counsel and on the briefs).

Robert J. Greenbaum argued the cause for respondents/cross-appellants RIS Construction Corporation.

William F. Waldron, Jr. argued the cause for respondent Bowman Consulting Group, Ltd. (Marshall Dennehy Warner Coleman & Goggin, attorneys; William F. Waldron, Jr., of counsel and on the brief; Michael S. Fogler, on the brief).

Peter K. Oliver argued the cause for respondent Frontier Engineering Services, LLC (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Lawrence P. Powers, of counsel and on the brief; Peter K. Oliver, on the brief).

Don R. Sampen (Clausen Miller, PC) of the Illinois bar, admitted pro hac vice, argued the cause for respondent Fox Architectural Design, PC (Clausen Miller PC, attorneys; Carl M. Perri, Matthew T. Leis, and Don R. Sampen, on the brief).

PER CURIAM

These appeals and cross-appeals stem from a trial court's dismissal of a lawsuit, and all counterclaims, cross-claims, and third-party complaints pled in that lawsuit, based on entire controversy grounds.

Plaintiff had filed a lawsuit against a single defendant in one county. While that first case was still pending, plaintiff filed a second lawsuit in another county against other defendants. They, in turn, filed a third-party complaint in the second case against the defendant from the first case. Various other third-party claims, counterclaims, and cross-claims were also pled in the second case.

Although the subject matters of the two cases partially overlapped, plaintiff did not include with its pleadings the related-matter notices required by Rule 4:5-1(b)(2).

Months later, plaintiff settled with the sole defendant in the first case and the case was dismissed. That settling party then moved to dismiss the third-party complaint against it in the second case, invoking the entire controversy doctrine. The trial court in the second case granted that motion, and issued an

3

order extinguishing all claims asserted by all parties in the second lawsuit. The court also denied reconsideration. The present appeals ensued.

Having reviewed these circumstances in light of the equitable principles limiting the entire controversy doctrine, we reverse the second trial court's dismissal order. Although we appreciate the court's laudable concern to enforce Rule 4:5-1(b)(2)'s notice requirement, its blanket dismissal order had overly preclusive consequences.

We reinstate the claims in the second lawsuit, except for what we will describe as "pass-through" claims asserted in the third-party complaint against the settling party. The matter is remanded to litigate the remaining open claims, and also to adjudicate the "economic loss" defenses that have been asserted. On remand, the trial court shall consider alternative measures to sanction plaintiff's unjustified failures to comply with Rule 4:5-1(b)(2).

I.

We need not burden the reader with a comprehensive discussion of the complicated factual and procedural history of the two lawsuits. The parties are surely familiar with that background. In addition, only limited discovery has been conducted. The following abbreviated summary will suffice for our purposes.

The disputes concern two separate construction projects in which plaintiff Glenmore Management, LLC and RTE 22W, LLC[1] ("Glenmore") was the owner/developer of: (1) a parcel in Englewood (in Bergen County) that Glenmore planned to convert to a parking lot; and (2) a site in North Plainfield (in Somerset County) that Glenmore planned to develop as a Goodwill retail and collection center.

Glenmore contracted with Bowman Consulting Group, Ltd. ("Bowman"), formerly known as Omland Engineering Associates, Inc. ("Omland"), to provide engineering and design services for both the Englewood project and the North Plainfield project.

For the North Plainfield project, Glenmore contracted with RIS Construction Corp. ("RIS") to act as the lead contractor, for a contract price of $1.654 million. The principal of RIS, Blagoj Peovski, personally guaranteed his company's performance and obligations. Also for the North Plainfield project, Glenmore entered into separate agreements with Frontier Engineering Services,

---

[1] For simplicity, we refer collectively to these entities as "Glenmore" and describe them as "plaintiff" in the singular.

A-1920-19

LLC ("Frontier") and Fox Architectural Design, P.C. ("Fox").[2] RIS and Peovski were not involved in the Englewood project, nor were Frontier and Fox.

Problems arose with the construction at both sites. On the Englewood project, the work apparently stalled because Bowman allegedly delayed in providing waivers to the Englewood Zoning Board of Adjustment needed for a variance. Substantial delays also occurred on the North Plainfield project. Glenmore and RIS contend the delays were caused, at least in part, by alleged defects with Bowman's engineering designs.

On June 25, 2017, Glenmore and RIS entered into an Agreement of Loan and Guaranty to address their respective rights ("the June 2017 Agreement"). Among other things, that agreement provides that RIS is liable for liquidated damages if it causes delays in the work. Glenmore subsequently gave notice to RIS in March 2018 that it was in breach of contract due to such delays.

The June 2017 Agreement stated that RIS agreed it owed Glenmore $320,000 in liquidated damages as of that date, which could thereafter increase on a daily basis. However, Glenmore and RIS also agreed that the $320,000 sum "may decrease if a lawsuit or similar legal action is commenced relating to

_____

[2] It does not appear from the limited appellate record that RIS or Peovski had contracts with Bowman, Frontier, or Fox, all of whom were hired by Glenmore.

6

[the] Project . . . and a court determines that the delays . . . were less than 66% [of RIS's] fault[.]" The June 2017 Agreement provided that if RIS's fault were proven to be less than 66%, it would be entitled to a pro rata (i.e., proportional) reduction of the stipulated delay damages, described as a "set-off." The June 2017 Agreement also provided that unpaid change orders by RIS, pending Glenmore's approval, would be deemed to "make up" for the delays caused by RIS and would not be paid. However, RIS would be entitled to a credit for any sums Glenmore collected from any third parties for damages relating to "specific" change orders.

Notably, the June 2017 Agreement also reflects that Glenmore loaned RIS $170,000, and that RIS was obligated to pay that loan back. RIS disputes whether such a loan was actually extended, apparently contending the sums instead were contract advances.

In January 2018, Glenmore filed an engineering malpractice case against Bowman in the Law Division in Bergen County ("the first lawsuit" or "the Bergen case"). No other codefendants were named in that Bergen County action, and Bowman did not implead any third-party defendants. Glenmore's complaint alleged that Bowman had acted negligently and breached its obligations with respect to both the Englewood and North Plainfield projects. The complaint

further alleged that as "a direct consequence of Bowman's breaches and negligence related to the [North Plainfield Project], [Glenmore was] forced to incur additional costs with RIS to make corrections to the [North Plainfield Project][.]"

The Bergen case settled about a year later, with Bowman agreeing to pay Glenmore a confidential sum[3] in exchange for a release of Glenmore's claims against it for both the Englewood and North Plainfield sites. The stipulation of dismissal was filed in the Bergen case on March 6, 2019.

While the Bergen case was still pending in July 2018, Glenmore filed a second action ("the second lawsuit" or "the Somerset case"), which solely concerned the North Plainfield project. That complaint was filed in the Law Division in Somerset County, and named RIS and Peovksi as defendants.

RIS initially did not respond to the Somerset complaint, apparently because Peovski had been ill, and default was entered. After the default was eventually vacated, RIS brought a counterclaim against Glenmore for unpaid change orders. RIS also pled third party complaints against Bowman, Frontier,

---

[3] The parties entered into a confidentiality agreement and order in the Bergen case sealing the terms of the Glenmore-Bowman settlement. Although that confidentiality order is not binding upon this court on appeal, there is no reason for us to discuss the settlement amount here.

Fox, and Omland based on common-law (i.e., non-contractual) theories of contribution and indemnity.

For reasons that are unclear, Glenmore failed to disclose in its Rule 4:5-1(b)(2) certification with its complaint in the Somerset case that the related Bergen case was then pending. Glenmore also inexplicably failed to update its Rule 4:5-1(b)(2) certification in the Bergen case disclosing that the related Somerset case had been filed. The two lawsuits co-existed for about eight months, until the stipulation of dismissal was filed in the Bergen case in March 2019.

After settling the Bergen case, Bowman moved to dismiss the third-party complaint RIS brought against it in the Somerset case. A spate of other motions ensued.

The central issue before the trial court was whether Glenmore's second lawsuit in Somerset was barred by the entire controversy doctrine.[4] As a subsidiary issue, Bowman, Frontier, and Fox argued that the negligence-based third-party claims of RIS against them are barred by the so-called "economic loss" doctrine, as set forth by the Supreme Court in Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 579-81 (1985) (finding that "tort principles,

_____

[4] At times we will use the acronym "ECD" for stylistic variation.

such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident[,]" and "[c]ontract principles … are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement[,]" ultimately concluding that "economic expectations … protected by the [Uniform Commercial Code] are not entitled to supplemental protection by negligence principles[]"), Dean v. Barrett Homes, Inc., 204 N.J. 286, 294-95 (2010) (holding that the economic loss doctrine "bars tort remedies in strict liability or negligence when the only claim is for damage to the product itself[,]" and "evolved as part of the common law, largely as an effort to establish the boundary line between contract and tort remedies[]"), and other cases.

In a lengthy written opinion issued on November 6, 2019, the trial court dismissed the entire Somerset case, and all claims pled within it by the various parties, on ECD grounds. The court excoriated Glenmore and its (now former) attorneys for failing to disclose the pendency of the other lawsuits in its two Rule 4:5-1(b)(2) certifications. The court also found that RIS would be prejudiced in defending the delay damages claims in the second case because of Bowman's settlement in the first case, which arguably relieved Bowman of liability concerning both projects.

A-1920-19

After reflecting upon the equities, the court decided to end the second lawsuit in all respects, essentially leaving Glenmore and all the other parties where they stood. The court found it unnecessary to reach the economic loss doctrine arguments, particularly considering the undeveloped state of the record.

Glenmore, RIS, and Peovski moved for reconsideration, which was opposed by Fox, Bowman, and Frontier. The court denied reconsideration in another lengthy opinion on December 23, 2019.

Glenmore appealed the dismissal of its claims in the second case. RIS and Peovski cross-appealed the dismissal of their counterclaim against Glenmore and their third-party claims against Bowman and the other parties.

Glenmore argues the trial court went too far in sanctioning it for the omitted Rule 4:5-1(b)(2) notifications, particularly in depriving Glenmore of a chance to pursue recovery from RIS and Peovski on the $170,000 allegedly owed under the loan provision of the June 2017 Agreement, which it further claims had little or nothing to do with the subject matter of the Bergen case.

RIS and Peovski do not quarrel with the court's preclusion of Glenmore's affirmative claims, but they argue it was excessive and unfair to preclude their own counterclaims and third-party claims.

A-1920-19

Bowman, on the other hand, argues the court properly acted within its discretion, and that, in any event, its settlement with Glenmore in the Bergen case and the economic loss doctrine bars any negligence claims asserted against it by RIS or any of the other parties in the Somerset case. RIS responds that it has affirmative claims against Bowman over and above any liability it may have to Glenmore, and that those claims are not barred.

Fox and Frontier are content to have the claims against them extinguished, but state that, in the event those claims are reinstated on appeal, the court must address their argument that they are insulated from liability under the economic loss doctrine.

## II.

In general, the entire controversy doctrine, as codified in Rule 4:30A, requires all parties to an action to raise all transactionally related claims in that action. The ECD is an equitable preclusion doctrine that "seeks to assure that all aspects of a legal dispute occur in a single lawsuit." Olds v. Donnelly, 150 N.J. 424, 431 (1997).

As our Supreme Court has noted, "[t]he entire controversy doctrine 'seeks to impel litigants to consolidate their claims arising from a single controversy whenever possible.'" Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo,

Hyman & Stahl, P.C., 237 N.J. 91, 98 (2019) (quoting Thornton v. Potamkin Chevrolet, 94 N.J. 1, 5 (1983)).  "The doctrine serves 'to encourage complete and final dispositions through the avoidance of piecemeal decisions and to promote judicial efficiency and the reduction of delay.'"  Ibid. (quoting Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 610 (2015)).  "Underlying the Entire Controversy Doctrine are the twin goals of ensuring fairness to parties and achieving economy of judicial resources."  Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co., 207 N.J. 428, 443 (2011).

The doctrine generally disfavors successive suits regarding the same controversy.  See DiTrolio v. Antiles, 142 N.J. 253, 267 (1995) (summarizing the development of the Court's application of the entire controversy doctrine).  Therefore, when a party fails to assert a claim that the entire controversy doctrine requires be joined in an action, the court has the authority to bar that claim or adopt other measures.  R. 4:30A.

One of the key tools in the Rules of Court to promote compliance with the entire controversy doctrine is the notification requirement in Rule 4:5-1(b)(2).  Rule 4:5-1(b)(2) is designed to "implement the philosophy of the entire controversy doctrine."  Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:5-1(b)(2).  That Rule instructs:

A-1920-19

Each party shall include with the first pleading a certification as to whether the matter in controversy is the subject of any other action pending in any court or of a pending arbitration proceeding, or whether any other action or arbitration proceeding is contemplated; and, if so, the certification shall identify such actions and all parties thereto. Further, each party shall disclose in the certification the names of any non-party who should be joined in the action pursuant to R. 4:28 or who is subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts. Each party shall have a continuing obligation during the course of the litigation to file and serve on all other parties and with the court an amended certification if there is a change in the facts stated in the original certification. The court may require notice of the action to be given to any non-party whose name is disclosed in accordance with this rule or may compel joinder pursuant to R. 4:29-1(b). If a party fails to comply with its obligations under this rule, the court may impose an appropriate sanction including dismissal of a successive action against a party whose existence was not disclosed or the imposition on the noncomplying party of litigation expenses that could have been avoided by compliance with this rule. A successive action shall not, however, be dismissed for failure of compliance with this rule unless the failure of compliance was inexcusable and the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action.

[(Emphasis added).]

Pursuant to these Rule provisions, a court may dismiss a successive suit where non-compliance with the disclosure requirements is deemed

14

"inexcusable" and to have "substantially prejudiced" the unnamed party's right to defend the action.  Ibid.

That said, the Supreme Court has stressed that the entire controversy doctrine must be applied equitably, and that it is not a rigid mandate to bar all successive or overlapping lawsuits.  "[T]he boundaries of the entire controversy doctrine are not limitless. It remains an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases." Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009) (quoting Oliver v. Ambrose, 152 N.J. 383, 395 (1998)).

"[T]he polestar for the application" of the doctrine is "judicial fairness," and "a court must apply the doctrine in accordance with equitable principles, with careful attention to the facts of a given case."  Dimitrakopoulos, 237 N.J. at 114 (quoting K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 74 (2002)).

Accordingly, the Supreme Court has expressed three "significant concerns" supporting preclusion under the entire controversy doctrine: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of

15

delay." Id. at 108 (quoting Wadeer, 220 N.J. at 605). The doctrine is "intended to be applied to prevent a party from voluntarily electing to hold back a related component of the controversy in the first proceeding by precluding it from being raised in a subsequent proceeding thereafter.'" Wreden v. Twp. of Lafayette, 436 N.J. Super. 117, 129 (App. Div. 2014) (quoting Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J. Super. 229, 240-41 (App. Div. 2002)).

The doctrine should not be applied "where to do so would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy and efficiency." Dimitrakopoulos, 237 N.J. at 114 (quoting K-Land, 173 N.J. at 70). When analyzing fairness, "courts should consider fairness to the court system as a whole, as well as to all parties." Wadeer, 220 N.J. at 605 (citing DiTrolio, 142 N.J. at 273-74). Furthermore, the entire controversy doctrine "does not apply to bar component claims [either] unknown, unarisen, or unaccrued at the time of the original action." Harley Davidson Motor Co., Inc. v. Advance Die Casting, Inc., 150 N.J. 489, 494 (1997) (alteration in original) (quoting Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 323 (1995)).

Bearing in mind these equitable principles, we conclude the trial court's blanket dismissal order, designed as a sanction against Glenmore, caused overly preclusive consequences. Although a trial court has considerable discretion in its application of the ECD, see Oliver v. Ambrose, 152 N.J. 383, 395 (1998), we conclude—with all due deference to the trial court—that its dismissal order went too far. Other measures ought to be considered to address Glenmore's non-compliance with Rule 4:5-1(b)(2).

It is not self-evident that RIS or Peovski were necessary parties to the Bergen case. In that case, Glenmore sued Bowman for its own alleged negligence and contractual breaches for the two delayed projects. Bowman chose not to bring third-party claims in that case to attempt to shift the blame to others. By comparison, the Somerset case was exclusively about the North Plainfield project. A major component of Glenmore's complaint in the Somerset case was its claim that RIS and Peovski failed to pay back the loan in accordance with the June 2017 agreement. That loan default (which we understand RIS and Peovski dispute) was not a compulsory claim that had to be included in the Bergen case between Glenmore and Bowman. It was not mandatory for the loan issues to be litigated in the first case.

17

We do agree with the trial court that the parties have presented no legal grounds for Bowman, having settled with Glenmore in the first case concerning its role in both construction projects, to be liable as a third-party defendant in the second case for any "pass-through" claims of negligence. RIS's third-party claims against Bowman implicitly appear to be partly based on common-law tort principles of contribution and indemnity, and not upon contractual indemnification. If, in fact, Bowman's negligence caused the North Plainfield project to be delayed, its negligence with respect to "pass-through liability" has been resolved via settlement with the project owner and developer, Glenmore. The settlement would have extinguished RIS's derivative third-party claims even if RIS had been joined as a party in the Bergen case. However, the settlement would not extinguish RIS's affirmative ("non pass-through") claims over and above RIS's potential liability to Glenmore.

Subject to that one caveat, we agree with the trial court that Bowman should not be "forc[ed] … to re-litigate a case that it ha[d] already resolved via the Settlement Agreement with [Glenmore][.]" Consequently, we affirm in part the trial court's dismissal of Bowman from the Somerset case, but solely with respect to "pass-through" liability and not any viable affirmative claims that are not barred by an economic loss defense. If such affirmative claims are shown

A-1920-19

to be viable, we do not discern any unfair burden upon Bowman to have to defend them in the second case, since it settled the first case promptly and apparently without extensive discovery.

Having removed Bowman entirely from the second case, the trial court further concluded that RIS would be substantially prejudiced because of Bowman's absence as a party in that litigation. But that is not necessarily so. For one thing, Bowman's employees would still be potential fact witnesses and thus subject to subpoenas for their testimony at depositions and at trial in the Somerset case. As part of that process, Bowman could be required to produce relevant documents about the North Plainfield project in its possession. See R. 4:14-7(a); R. 4:18-1(d). The Bergen settlement does not insulate Bowman from such discovery and testimonial demands, and Bowman has not argued to us that it can or will avoid them.

Further, the degree to which any negligence on the part of Bowman may have contributed to delays and losses on the North Plainfield project can still be adjudicated by a fact-finder in the Somerset case. As a settling party, Bowman can nonetheless be blamed by RIS and Peovski as a proximate cause of project delays and losses, and its conduct evaluated as an "empty chair" defendant. See, e.g., Young v. Latta, 123 N.J. 584, 585-86 (1991) (holding that where one

defendant accused of negligence settled prior to trial, the non-settling-defendant was entitled to argue the settling-defendant's portion of fault before the fact-finder and be given a credit in the judgment against that non-settling-defendant). Its percentage share of negligence can be calibrated by the trier of fact. That percentage, in turn, can be used to compute and offset the amounts that may be due to Glenmore from RIS and Peovski, pursuant to the numerical formula specified in the June 2017 Agreement.

Hence, it is not necessary to bar Glenmore's claims against RIS and Peovski for non-payment of the loan and other damages, because RIS and Peovski can try to defend those claims by pointing to Bowman as the proverbial "empty chair" settlor. There is no need to provide RIS and Peovski with what may be a windfall eliminating their potential liability, especially with respect to the unpaid alleged loan.

The trial court's broad dismissal order also inequitably deprives RIS and Peovski of a fair opportunity to pursue their own affirmative claims against Glenmore for non-payment of change orders and other grounds for recovery. It is unclear why a sanction aimed at Glenmore for violating Rule 4:5-1(b)(2) should deprive innocent litigants such as RIS and Peovski of a chance to pursue their own affirmative claims. To be sure, RIS and Peovski would benefit if, as

20

the trial court directed, Glenmore's claims against them—including repayment of the $170,000 alleged loan—were dismissed with prejudice. But RIS and Pevoski contend that Glenmore owes them money, and we discern no reason to apply the ECD to preclude their counterclaims.

The dismissal order also unnecessarily eliminates the third-party claims of RIS and Peovski against Fox and Frontier, and the various cross-claims connected with those allegations. In all fairness, those claims should be reinstated and litigated on their merits. We decline to address in the first instance whether the "economic loss" doctrine bars such claims as a matter of law, and leave that issue to the trial court to address on remand, perhaps with the benefit of discovery pertinent to that subject.

That said, we share the trial court's rightful concern about promoting compliance with the notice obligations of Rule 4:5-1(b)(2), and in deterring lawyers and litigants in the future from ignoring the Rule. Toward that end, we instruct the trial court on remand to consider alternative measures that would sufficiently address Glenmore's non-compliance.

As one possibility, the court might consider whether imposing on Glenmore some form of expense-shifting sanction, as authorized as an alternative remedy under Rule 4:5-1(b)(2), is warranted to take into account the

litigation expenses the other parties incurred in connection with the ECD motion practice and the present appeal. Since the propriety of such a sanction has not been briefed, we leave it to the trial court to address that topic, or other remedies it might fashion. We express no advisory opinion about whether cost-shifting or other sanctions are appropriate.

Affirmed in part as to the dismissal of Bowman; otherwise reversed and remanded for proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1920-19