**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1619-20

IQBAL HUSAEEN,
AK CONSTRUCTION, and IR
CORPORATION, INC., d/b/a
IR CONSTRUCTION,

      Plaintiffs-Appellants/
      Cross-Respondents,

and

MUBARAK AHMED,
MOHAMMED A. RAHIM,
MUHAMMAD MAIN UDDIN,
MOHAMMED MAHBUBUR
RAHMAN, and MOHAMMED
MAIN UDDIN,

      Plaintiffs,

v.

MUSLIM UMMAH TRUST, INC.,
d/b/a MASJID AL-HERA,
MOHAMMED EMDADUL
HOQUE, MD ZIAUL ISLAM,
MOHAMMED JASHIM UDDIN,
MOHAMMED OBYED
CHOWDHURY, MOHAMMED
ELIAS, KAZI ELIAS, NASIR

UDDIN, ABDUL KALAM AZAD
and MUHAMMAD R. AMIN,
jointly, severally and in the alternative,

      Defendants-Respondents/
      Cross-Appellants.

_____

Submitted May 2, 2022 – Decided July 1, 2022

Before Judges Rothstadt and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-3182-19.

George N. Polis, attorney for appellants/cross-respondents.

Soliman & Associates, PC, attorneys for respondents/cross-appellants (Ahmed M. Soliman, on the brief).

PER CURIAM

Plaintiffs Iqbal Husaeen, AK Construction (AKC), and IR Corporation d/b/a IR Construction (IRC) appeal from the Law Division's February 28, 2020 order that dismissed with prejudice, under Rule 4:6-2(e), the third count of their complaint against defendant Muslim Ummah Trust, Inc. d/b/a Masjid Al-Hera (the Trust), and from a January 19, 2021 order denying their motion for reconsideration. According to plaintiffs, the motion judge improperly dismissed

A-1619-20

the one count after concluding that it was barred by the Entire Controversy Doctrine (ECD).

The Trust and defendants Mohammed Emdadul Hoque, Md Ziaul Islam, Mohammed Jashim Uddin, Mohammed Obyed Chowdhury, Mohammed Elias, Kazi Elias, Nasir Uddin, Abul Kalam Azad, and Muhammad R. Amin cross-appeal from a May 24, 2021 order, directing them to deposit $7,500 into a "trust account to be managed by plaintiffs" to reimburse "litigation costs incurred by the litigants," essentially creating a litigation fund. On appeal, defendants argue that the motion judge erred because the reimbursement of attorney's fees was not mandated by any rule or statute, and each side should bear their own litigation costs.

We have considered the parties' contentions in light of the record and the applicable principles of law. We reverse the dismissal order because we conclude the motion judge misapplied the ECD. We remand the litigation fund order because the motion judge did not provide sufficient reasons identifying the authorities she relied upon in support of her order. Without that explanation, we cannot perform our appellate function.

A-1619-20

I.

The present cross-appeals are part of an ongoing dispute that has already been addressed in at least two completed lawsuits and their two appeals. See Muslim Ummah Trust, Inc. v. Iqbal Husaeen (Husaeen I), No. A-0130-18 and No. A-0271-18 (App. Div. Mar. 16, 2020) (slip op. at 1, 4). Those actions involved claims related to the corporate control and operation of a mosque. The facts underlying those litigations are well known to the parties, are set forth at length in our earlier opinion, and for our purposes, need not be repeated here. As noted infra, there are two other lawsuits still pending. We only observe that AKC and IRC were not parties to the earlier disputes.[1]

In this action, on November 27, 2019, Husaeen, and plaintiffs Mubarak Ahmed, Mohammed A. Rahim, Muhammad Main Uddin, Mohammad Mahbubur Rahman, and Mohammed Main Uddin filed a new complaint that sought equitable relief and damages related to defendants' control and operation of the mosque. Specifically, their two-count complaint asserted claims about

---

[1]  We observe that in defendants' appellate brief's recitation of the facts, defendants failed to support their factual contentions with any reference to either party's appendix or transcripts in contravention of Rule 2:6-2(a)(5) and Rule 2:6-4(a).

defendants conducting an election on November 17, 2019, that improperly ousted them from the Trust's board of trustees, in violation of its bylaws.

On February 7, 2020, plaintiffs filed an amended verified complaint, which added AKC and IRC as plaintiffs and a third count that alleged that the Trust defaulted on its payment of loans made by AKC, IRC, and Husaeen. Defendants responded by filing an answer to the original complaint, followed by a motion to dismiss the entire complaint as amended under Rule 4:6-2.

On February 28, 2020, the motion judge entered an order granting in part, and denying in part, defendants' motion to dismiss. Specifically, the judge denied dismissal of the complaint's first two counts[2] but granted defendants' motion to dismiss count three of the amended complaint. According to the judge's oral decision, she concluded the claim about the loans was barred by the ECD because the alleged loans "were known [to Husaeen] prior to the original lawsuit before th[e] [c]ourt." In making her determination, the judge reasoned as follows:

> This [c]ourt determined [in an earlier action] that plaintiffs had improperly loaned Mr. Rahim [$6,500].

---

[2]  In doing so, the judge rejected defendants' argument that collateral estoppel applied to those claims. The judge concluded they were "not identical to the claims litigated and decided by this [c]ourt at trial."

And on February 1[], 2019[,] this [c]ourt ultimately ordered Mr. Rahim to repay [the Trust] that loan.

However, at no time during the previous litigation did plaintiffs file any kind of a counterclaim for any additional alleged loans even though the prior litigation involved the same parties. Instead, on February 7[], 2020[,] plaintiffs filed an amended verified complaint [in the current litigation] demanding repayment of an alleged loan made [by] one of the parties involved in the prior litigation and now his business. And that amount is somewhere over the amount of [$200,000] as was proffered this morning.

The issue of the loans between these parties should have been fully litigated in . . . at least one of two prior actions, either in the original action brought before this [c]ourt[3] because the loan to Mr. Husaeen was known prior to that litigation and all during that litigation. Or at a minimum[,] before [another judge] in the . . . [consolidated] action[s][4] that ha[ve] yet to be decided. . . .

---

[3] The judge's reference here is to Muslim Ummah Trust, Inc. v. Iqbal Husaeen, No. ATL-L-1451-17 (Law Div. June 29, 2018), one of the actions that was the subject of our earlier opinion in Husaeen I.

[4] The judge's reference here was to the matters of Mohammed Rahim v. Muslim Ummah Trust, Inc., No. ATL-DC-2546-19 and Bangla Trade, Inc. d/b/a Bangla Construction v. Muslim Ummah Trust, Inc., No. ATL-DC-2547-19. Neither party to the present action included copies of any relevant pleadings from the earlier actions, despite the numerous references to them in their briefs.

According to the dockets in the pending matters, neither Husaeen, AKC, or IRC were parties to either action, the matters were tried to conclusion on January 10, 2020, but no final disposition has been entered on the docket of either case, although they both indicate they were "disposed" by the trial court.

6

Therefore, the Court finds that dismissal of plaintiffs' amended verified complaint [c]ount [three] is appropriate and I will dismiss that count.

Plaintiffs filed a motion for reconsideration as to the dismissal of the amended complaint's third count. The motion was supported by an affidavit from Husaeen, which confirmed he was the "owner" of AKC and IRC.[5] He explained that when he and "others . . . began the formation of [the Trust]," funds were needed "for the formation and construction of the mosque," and in 2010, he, AKC, and IRC loaned money to the Trust for those purposes. Husaeen stated that the loans totaled "several hundred thousand dollars," but were not due and owing at the time of the filing of the earlier lawsuits that the judge had relied upon in dismissing his, AKC, and IRC's claim in this action. Moreover, although the Trust had carried the loans on its books for years, its representatives had only recently told him that the Trust had no intention of repaying the loans.

---

Inexplicably, there is no indication that the trial court entered a final judgment or other order disposing of those matters in over two years.

[5] According to plaintiffs' appellate brief, that affidavit had attachments consisting of "invoices and statements detailing the referenced loans." However, they were not included in plaintiffs' appendix.

A-1619-20

The motion judge entered an order denying plaintiffs' motion on January 19, 2021, supported by a written decision. In pertinent part, the judge stated the following:

> Plaintiff[s'] motion relies on two arguments: (1) the [a]mended [c]omplaint contains new parties that were not part of the original filing, and (2) the debts owed under [c]ount [three] of the [a]mended [c]omplaint were not yet due or had not accrued at the time of the previous trial.
>
> The first argument fails because the sole owner of the business entities named in the new complaint – [AKC] and [IRC] – is Iqbal Husaeen, who was not only a party to the prior lawsuit but took a fairly prominent role therein. In his Affidavit of March 12, 2020, he confirms that he is the only owner of these businesses. Essentially, Mr. Husaeen and his businesses are the same entity. As such, Mr. Husaeen could have, and should have, asserted his rights against the defendants on behalf of his business entities in the prior litigation.
>
> The second argument fails because whether the loans were due at the time of the prior litigation is inconsequential. . . . Here, the plaintiffs unequivocally knew about the ongoing legal entanglements with the defendants. The prior case (ATL-L-1451-17) not only involved the same parties, but the same property. This court correctly applied the [ECD] by precluding plaintiffs from litigating issues that could have – and should have – been addressed previously.
>
> [(Emphasis added).]

Prior to the judge entering the dismissal order, she held a plenary hearing as to the remaining counts of plaintiffs' complaint. On January 20, 2021, the

judge issued an order granting "plaintiffs' application to invalidate the November 17, 2019 election" because the Trust's bylaws "require a two-third majority of all, not just voting board members to replace any existing board member." Further, the motion judge found that it was clear that defendants made certain expenditures (e.g., replacing water lines, replacing sound system, roof work, and bonus to the Iman) that required board approval. She also found, however, that "to require defendants to repay that which was expended and done for the benefit of the [m]osque, would result in plaintiffs' unjust enrichment." Therefore, although the expenditures were made without board approval, the judge did not require repayment and, instead, awarded plaintiffs' attorney's fees and costs.

On May 24, 2021, in response to defendants' motion for reconsideration, the motion judge issued an amended order correcting a clerical error under Rule 1:13-1, which vacated the portion of the January 20, 2021 order awarding plaintiffs' attorney's fees and costs. However, the judge entered an amended order that directed defendants to pay $7,500 into a trust account to be managed by plaintiffs for the purpose of "satisfy[ing] any litigation costs incurred by the litigants." These cross-appeals followed.

II.

A.

We begin by addressing plaintiffs' appeal from the order dismissing the third count of its complaint under <u>Rule</u> 4:6-2(e). We "review[] de novo the trial court's determination of the motion to dismiss under <u>Rule</u> 4:6-2(e)," <u>Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.</u>, 237 N.J. 91, 108 (2019), "applying the same standard under <u>Rule</u> 4:6-2(e) that governed the motion court." <u>Wreden v. Twp. of Lafayette</u>, 436 N.J. Super. 117, 124 (App. Div. 2014). In doing so, we "owe[] no deference to the trial court's legal conclusions." <u>Dimitrakopoulos</u> 237 N.J. at 108.

In considering a <u>Rule</u> 4:6-2(e) motion, we examine "the legal sufficiency of the facts alleged on the face of the complaint," <u>Printing Mart-Morristown v. Sharp Elecs. Corp.</u>, 116 N.J. 739, 746 (1989), limiting our review to "the pleadings themselves," <u>Roa v. Roa</u>, 200 N.J. 555, 562 (2010), the "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim," <u>Banco Popular N. Am. v. Gandi</u>, 184 N.J. 161, 183 (2005) (quoting <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 222 n.3 (3d Cir. 2004)).

Motions made under <u>Rule</u> 4:62-2(e) should be approached "with great caution" and should be granted "only in the rarest of instances." <u>Printing Mart</u>,

116 N.J. at 771-72. Finding the fundament of a cause of action in those documents is pivotal; a plaintiff's ability to prove its allegations is not at issue. Id. at 746. Nevertheless, a complaint should be dismissed if it states no valid claim, and discovery could not give rise to a claim. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021); Dimitrakopoulos, 237 N.J. at 107-08.

Here, we conclude that, as the motion judge apparently found, the third count of the complaint asserted a viable claim for repayment of a debt. Having reached that conclusion, we must therefore turn our attention to the judge's determination that the ECD barred AKC's and IRC's claims.

B.

A trial court's decision to apply (or not apply) the ECD is reviewed under an "abuse of discretion" standard. See 700 Highway 33 LLC v. Pollio, 421 N.J. Super. 231, 238 (App. Div. 2011). This standard aligns with the doctrine's fundamentally equitable purposes, the application of which is customarily "left to judicial discretion based on the factual circumstances of individual cases." Dimitrakopoulos, 237 N.J. at 114 (quoting Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009)). A trial court abuses its discretion when, among other reasons, its decision, as we conclude is the case here, "inexplicably departed from established policies, or rested on an

impermissible basis." State v. R.Y., 242 N.J. 48, 65 (2020) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

With these guiding principles in mind, we turn to the parties' contentions on appeal from the motion judge's application of the ECD. Plaintiffs argue that the ECD did not bar the claim about the loans because although Husaeen was aware of the loans, at the time of the earlier litigations, their claim against the Trust was "unaccrued" because the loans were not yet due to be paid. According to plaintiffs, the ECD "does not apply to claims that are 'unknown, unarisen or unaccured at the time of the original action,'" and our Supreme Court has cautioned that "[t]he doctrine 'should not be viewed as encouraging or requiring the filing of premature or unaccrued claims.'" They contend that knowledge of a claim does not cause a claim to accrue, only "actual damage" and "[a]ctual damages are those that are real [not] speculative." Moreover, in any event, AKC and IRC were never parties to any of the earlier actions and the fact that its sole shareholder was a party does not support application of the ECD.

In response, defendants argue the "sole shareholders" of the AKC and IRC "were the parties to the first lawsuit, and therefore the only people who could assert the rights of their corporations." Moreover, even if AKC and IRC were

not parties to one prior lawsuit "they are certainly parties" to a different action that is still pending, which is based on allegations of unpaid loans.[6]

The foundation for the ECD is set forth in Rule 4:30A. That rule states the following:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).
>
> [R. 4:30A]

"The [ECD] 'seeks to impel litigants to consolidate their claims arising from a single controversy whenever possible.'" Dimitrakopoulos, 237 N.J. at 98 (quoting Thornton v. Potamkin Chevrolet, 94 N.J. 1, 5 (1983)). Although "Rule 4:30A provides no further guidance as to what claims are 'required to be joined' by the doctrine," our Supreme Court "has explained that the 'claims must "arise from related facts or the same transaction or series of transactions" but need not share common legal theories.'" Bank Leumi USA v. Kloss, 243 N.J. 218, 226

---

[6] Defendants explain that although they have not received a ruling after the bench trial in the two actions pending in the Atlantic County Special Civil Part, in those actions they also asserted ECD defenses.

13

(2020) (first quoting Dimitrakopoulos, 237 N.J. at 119; and then quoting Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015)).

"Underlying the [ECD] are the twin goals of ensuring fairness to parties and achieving economy of judicial resources." Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co., 207 N.J. 428, 443 (2011). The doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Wadeer, 220 N.J. at 605 (quoting Nicastro, 201 N.J. at 125). The goals of the ECD include "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." Ibid. (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)).

"In determining whether a subsequent claim should be barred under [the ECD], 'the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions.'" Ibid. (quoting DiTrolio, 142 N.J. at 267).

"It is the core set of facts that provides the link between distinct claims against the same or different parties and triggers the requirement that they be determined in one proceeding." DiTrolio, 142 N.J. at 267-68. Absent a factual nexus grounded in a core set of related factual circumstances, however, the doctrine does not apply. Garvey v. Twp. of Wall, 303 N.J. Super. 93, 100 (App. Div. 1997) (concluding that the ECD did not apply because although both lawsuits involved the application of the township's water rates, the first action involved the constitutionality of an ordinance that retroactively increased residents' rates and the second challenged the township's policy of providing water to municipal buildings free of charge). "The doctrine does not apply to bar component claims either unknown, unarisen or unaccrued at the time of the original action." Pressler & Verniero, Current N.J. Court Rules, cmt. 3.3 on R. 4:30A (2022).

Here, it is undisputed that AKC and IRC were never parties to any prior action, nor were the loans they made to the Trust ever the subject matter of any prior action or part of the same transactions. Therefore, the ECD would only apply here if a party to the earlier actions, such as Husaeen, was obligated to raise the claim about the loans in the earlier actions. We conclude he was not obligated to do so.

The motion judge's determination that Husaeen was required to raise the claims is not supported by the law governing a corporate entity's independent existence. In order to set aside the distinction between a shareholder and a corporation, there must be evidence in the record to support the piercing of the corporate veil.

A party seeking to pierce the corporate veil must establish: (1) that the entity was "dominated" by the individual owner, and (2) "that adherence to the fiction of separate corporate existence would perpetrate a fraud or injustice, or otherwise circumvent the law." Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 199-200 (App. Div. 2006) (citing State, Dep't of Env't Prot. v. Ventron Corp., 94 N.J. at 473, 500-01 (1983)). "Ownership alone is not enough for piercing." Canter v. Lakewood of Voorhees, 420 N.J. Super. 508, 520, (App. Div. 2011).

Here, there was no evidence to support piercing other than Husaeen's ownership of AKC and IRC, and no fact-specific inquiry to determine whether Husaeen was the alter ego of either entity. The fact that Husaeen stated in his affidavit that he is the sole owner of the entities is insufficient to make a finding, as the motion judge here did, that "[he] and his businesses are the same entity."

See Verni, 387 N.J. Super. at 198 ("It is well established that 'a corporation is a separate entity from its shareholders . . . .'" (quoting Ventron, 94 N.J. at 500)).

Even accepting that the business entities as the alter ego of Husaeen, the ECD still did not apply because the original action that we addressed in Husaeen I, did not "arise from related facts or the same transaction or series of transactions."[7] Wadeer, 220 N.J. at 605. Instead, as already noted, the original action initiated by the Trust against plaintiffs, including Husaeen (then a defendant), involved allegations that plaintiffs attempted to change the Trust's corporate structure and the manner in which its board members were chosen. Husaeen I, slip op. at 3.

In addition, there was no evidence in the record of this matter that the loans were due and owing at the time of the filing or during the litigation of the matters that we considered in Husaeen I. Rather, in this action, according to

---

[7] In the original action, the Trust named the following as defendants: Iqbal Husaeen, Mubarak Ahmed, Mohammed A. Rahim, Muhammad Main Uddin, and Mohammad Mahbubur Rahman. Contrary to the Trust's arguments in this matter, AKC and IRC were not involved in that litigation. Moreover, in that action, a board member's loan to the Trust was tangentially addressed by the motion judge. Husaeen I, slip op. at 11. There, a board member, Rahim, failed to provide documentation substantiating a loan to the Trust, so the judge ordered him to comply with an earlier order entered in that action and to return the funds paid to him. Here then, there is no "factual nexus" that links the AKC's and IRC's loans to the Trust's original action and its claims against plaintiffs. See DiTrolio, 142 N.J. at 267-68; Garvey, 303 N.J. Super. at 100.

Husaeen's affidavit, which was unrefuted, the loans were not due and owing during the earlier time periods so that a claim had not yet accrued.

Moreover, the only evidence relating to the two matters still pending in the Special Civil Part is that neither Husaeen nor AKC nor IRC are parties to either action. The first action (No. ATL-DC-2546-19) filed by Rahim against the Trust, alleged that he loaned the Trust $11,533, which was not paid after making a demand. Rahim, who is a party in the current and original action, is the only plaintiff in that action. The second action (No. ATL-DC-2547-19) alleges that the plaintiff in that action loaned the Trust $8,750, which was not paid after making a demand. That plaintiff, Bangla Trade, is not party to the current or original action, and it is unclear who owns it.[8] Contrary to defendants' contention here, before trial was held on January 10, 2020, the judge in those still pending actions denied their motion to dismiss based on the ECD.

While it cannot be disputed that the pending actions involved other loans to the Trust, it is equally beyond cavil that there is no evidence that AKC, IRC, or Husaeen are parties to either action, or that those actions involve transactions related to the loans alleged in the third count of the complaint in this matter.

---

[8]  Although unsupported with any evidence from the record in this matter, defendants allege in their appellate brief that Husaeen has an ownership interest.

Under these circumstances we conclude that the dismissal of the third count of the complaint under the ECD was a mistaken exercise of the motion judge's discretion. For that reason, we reverse both the February 28, 2020 order of dismissal and the January 19, 2021 order denying reconsideration.

III.

We turn next to defendants' cross-appeal from the judge's May 24, 2021 order requiring defendants to establish a litigation fund. As already noted, after trying the first two counts of the complaint, the motion judge entered judgment in favor of plaintiffs and awarded counsel fees in her January 20, 2021 order that directed plaintiffs' "[c]ounsel [to] submit an [a]ffidavit of [s]ervice pursuant to R. 4:42-9(b).[9]" That order was supported by a written decision of the same date. In that decision, the judge explained that she required defendants to pay counsel fees based on her finding that "expenditures were made without [b]oard approval." She found plaintiffs' "application for attorney's fees reasonable [and] award[ed] fees and costs associated with this application."

In her May 24, 2021 order granting defendants' reconsideration, the judge vacated her earlier award of counsel fees but directed defendants to establish a

---

[9] A copy of the affidavit, if it was ever filed, is not included in either party's appendix.

A-1619-20

litigation fund from which the individual litigants could be reimbursed for "any litigation costs incurred by the litigants."  According to the judge's written decision issued on the same date, her latest order corrected a "clerical mistake" in that her earlier order "did not accurately reflect the decision delivered from the bench, nor the relief intended to be afforded to the plaintiffs."

The judge explained that in her March 10, 2021 oral decision, she "found that awarding attorney's fees was improper and instead, ordered defendants to pay damages in the amount of $7,500[, which] were to be paid by defendants into a trust managed by the plaintiffs."  (Emphasis added).  In her written decision she elaborated by explaining "[t]hat [the] trust account was to be managed by the plaintiffs, in their capacity as board members, to pay for any and all litigation expenses that they, or any member of the board of trustees, incur as a result of disputes within the mosque.  The [litigation fund] is not intended to reimburse the corporate entity."

The judge did not support any of her decisions about attorney's fees, damages, or the litigation fund with citation to, or even a mention of, any legal authority that supported the establishment of a litigation fund "instead of" an award of counsel fees or in lieu of damages, or any explanation of how the $7,500 amount was calculated.

In their cross-appeal, defendants argue that the judge "never explained the legal basis for requiring repayment of those fees" and that this case is not of the type that would warrant an award of fees under Rule 4:42-9(a). They also contend that each side should be responsible for their own fees because "there is no agreement between the parties in this matter that allows for attorney's fees, nor has [plaintiffs] based their lawsuit on any statute . . . that allows for the reimbursement of attorney's fees."

Plaintiffs disagree and argue that the motion judge did not award attorney's fees pursuant to Rule 4:42-9(b). Instead, plaintiffs contend that the judge "using [her] inherent equitable powers and in light of the complexities wherein . . . minority board members were wrongfully deprived for their governing roles," the motion judge "fashion[ed] a just and appropriate remedy." They explain that in her January 20, 2021 written decision, the judge found that defendants had "wrongly voted [plaintiffs] off" the board of trustees and "routinely made expenditures in excess of $500 without approval in contravention of the [Trust's] bylaws."

We conclude that our ability to perform our appellate function and properly review the judge's determination about the litigation fund is hampered by the judge's failure to provide a detailed statement of reason as to authority

21

she relied upon in establishing the litigation fund, initially in lieu of attorney's fees and then instead of damages. See R. 1:7-4 (requiring the trial court to "find the facts and state its conclusions of law thereon . . . on every motion decided by a written order that is appealable as of right"); see also Curtis v. Finneran, 83 N.J. 563, 570 (1980) ("Naked conclusions do not satisfy the purpose of R[ule] 1:7-4."); Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996) ("The absence of adequate findings . . . necessitates a reversal. . . .").

Here, again, the motion judge never identified any legal authority for her orders addressing damages, attorney's fees, or the litigation fund. The judge failed to correlate factual findings with conclusions of law, or otherwise explain her decisions. Further, her decisions are devoid of any citation to, and analysis of the governing law.

For those reasons, we also remand the issue back to the motion judge for her to issue a new written or oral decision about the establishment of the litigation fund that comports with the requirements of Rule 1:7-4. The remand as to this issue can abide the outcome of the trial or other disposition of plaintiffs' reinstated third count of the complaint.

Reversed in part; vacated and remanded for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1619-20