**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0080-23

ANTHONY MCCOY,

    Plaintiff-Appellant,

v.

ARDE, INC., LORRAINE KUNZ,
LOUIS TANTILLO, THOMAS
WILSON, and VINCENT MANCUSO,

    Defendants-Respondents.

_____

Argued March 6, 2024 – Decided October 9, 2024

Before Judges Accurso and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6073-22.

Andrew Dwyer argued the cause for appellant (The Dwyer Law Firm, LLC, attorneys; Andrew Dwyer, of counsel and on the briefs).

Danielle E. Acocella argued the cause for respondents (Constangy, Brooks, Smith & Prophete, LLP, attorneys; Anjanette Cabrera and Danielle E. Acocella, on the brief).

The opinion of the court was delivered by

VERNOIA, P.J.A.D.

In this employment discrimination, harassment, and retaliation case, we granted plaintiff Anthony McCoy leave to appeal from an order granting defendants Arde, Inc.'s (Arde), Lorraine Kunz's, Louis Tantillo's, Thomas Wilson's, and Vincent Mancuso's motion to stay the Law Division proceedings and compel arbitration of plaintiff's causes of action under the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -49, pursuant to a putative arbitration agreement between plaintiff and Arde. We affirm.

I.

At all times pertinent to the claims asserted in plaintiff's complaint, Arde was party to a collective bargaining agreement (the CBA) with Service, Production, Merchandising, Wholesale, Distribution, Clerical and Health Related Services, Airline, Airport and Aerospace Employees Union, Local 210, International Brotherhood of Teamsters (the Union). The Union is the collective bargaining representative for Arde's employees in certain job titles, including the title plaintiff held during his employment with the company.[1]

---

[1] The CBA states the Union is the collective bargaining agent for "all" of Arde's "employees" in certain specified job titles. Based on the allegations in the

A-0080-23

The CBA includes a procedure for the resolution of grievances, which the CBA defines as disputes "with respect to the interpretation or application of any provision of the" CBA. The CBA does not include state statutory discrimination claims within the definition of grievances subject to the CBA's grievance-and-arbitration-procedure, and plaintiff acknowledges and concedes that the NJLAD claims asserted in plaintiff's Law Division complaint are not subject to the CBA's grievance-and-arbitration procedure.

The CBA's grievance-and-arbitration procedure consists of various steps that culminate with binding arbitration before the American Arbitration Association. The CBA also prohibits the discharge of employees "without good and sufficient cause" and provides that the Union may challenge an employee's discharge as a violation of that contractual agreement in accordance with the grievance procedure.

In pertinent part, the CBA further provides that neither Arde nor the Union will discriminate "against any individual with respect to hiring, compensation, [or] terms or conditions of employment because of such individual's race, color,

complaint, Arde employed plaintiff in one of the job titles within the collective bargaining unit. Plaintiff therefore was a member of the collective bargaining unit represented by the Union commencing with the start of his employment— including during the initial forty-five days of his employment that the CBA deems a probationary period—and until the termination of his employment.

creed, religion, sex, national origin, age, disability, or any characteristic protected by law" and will not discriminate against any employee because of their membership in the Union.

The CBA also includes a provision, titled "ALTERATION OF AGREEMENT," that prohibits agreements between Arde and its employees that are inconsistent with the CBA. The provision states, in part, as follows:

> No agreement, alteration, understanding, variation, waiver or modification of any of the terms [or] conditions or covenants herein, shall be made by any employee or group of employees with the Company and, in no case, shall it be binding upon the parties hereto unless such agreement is made and executed in writing between the parties hereto.

Arde hired plaintiff for a bargaining-unit position, and plaintiff commenced his employment in January 2015. On December 5, 2014, prior to the commencement of his employment, plaintiff executed Arde's "Mutual Agreement to Arbitrate Claims" (MAAC), which, consistent with its name, states that plaintiff must submit to arbitration certain claims and controversies— including those for violations of state statutes—arising out of his employment with Arde and the termination of his employment. On December 10, 2014, prior to the commencement of Arde's employment, a company staffing coordinator executed the MAAC on Arde's behalf.

4

The MAAC states that plaintiff "consent[s] to the resolution by arbitration of all claims or controversies ('claims'), past, present or future, whether arising out of [his] employment (or its termination), that . . . [he] (and no other party) may have against" Arde, "its officers, directors, employees or agents" and its and their "successors or assigns." The MAAC further provides that the "[a]rbitrable claims include but are not limited to: claims for wages or other compensation due"; "claims for discrimination" including claims for racial discrimination; and "claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance," except as otherwise provided in the MAAC.

The MAAC excepts from the claims otherwise arbitrable those filed "for temporary equitable relief in aid of arbitration, where such an action is otherwise available by law," administrative charges made to any "federal, state or local equal opportunity or fair employment practices agency," "administrative charge[s] to the" National Labor Relations Board, and other specified administrative proceedings. Plaintiff does not argue that any of the exceptions apply here.

The MAAC also describes in detail the prescribed procedure for the arbitration of any claims falling under the arbitration requirement. The

procedure requires the submission of such claims to arbitration "under the auspices of the Judicial Arbitration [and] Mediation Services."

The MAAC includes a bolded acknowledgment, which plaintiff signed, stating he had reviewed and understood the agreement, entered into it voluntarily, and did not rely on any promises that were not expressly set forth in the agreement. The acknowledgement further states plaintiff understood that by entering into the MAAC, he had given up his right to a jury trial and had been provided an opportunity to discuss the agreement with his "private legal counsel."

In November 2020, Arde terminated plaintiff's employment. Plaintiff later filed a complaint in the Law Division alleging that during his employment, the individual defendants—who were at various times his co-employees and supervisors—harassed and otherwise discriminated against him based on his race—Black—and retaliated against him for objecting to the alleged discriminatory and harassing conduct. Plaintiff further alleged the discriminatory and retaliatory conduct culminated in Arde's termination of his employment.

Plaintiff's complaint asserted two causes of action under the NJLAD against Arde—one for racial discrimination and the other for retaliation. The

6

complaint also included a cause of action against the individual defendants, claiming they violated the NJLAD by aiding and abetting Arde's alleged discriminatory and retaliatory actions. The complaint does not include any claims alleging that Arde violated the CBA.

Defendants moved for a stay of plaintiff's lawsuit and to compel arbitration of the asserted NJLAD causes of action. Defendants argued plaintiff was required under the MAAC to arbitrate his state statutory NJLAD claims.

Plaintiff opposed the motion, claiming the MAAC was unenforceable because "the terms and conditions of [plaintiff's] employment were governed by" the CBA. Plaintiff also argued that because the CBA did not require arbitration of plaintiff's NJLAD claims and the MAAC was unenforceable, he was permitted to prosecute his claims in the Law Division action.

Plaintiff further asserted that the MAAC and CBA conflict and, as a result, the MAAC was not the product of the mutual assent required for a valid waiver of plaintiff's right to a jury trial on his NJLAD claims. Plaintiff claimed the agreements conflict because the MAAC requires submission of "any employment dispute" to arbitration in accordance with the procedure set forth in

7

that agreement and the CBA requires the submission of "any employment dispute" to arbitration in "a completely different procedure."[2]

Plaintiff also claimed the MAAC is unenforceable because the CBA's "ALTERATION OF AGREEMENT" provision prohibits Arde's entry "into any separate agreement with an employee" and that "if [Arde] did enter into a separate agreement with [an] employee, it would not be enforceable unless the [U]nion countersigned it, which . . . didn't happen here."

Arde argued there is no conflict between the CBA and MAAC because the CBA does not permit or require the prosecution of an employee's state statutory anti-discrimination claims under the grievance-and-arbitration procedure. Arde asserted that contrary to plaintiff's claim, the CBA's "ALTERATION OF AGREEMENT" provision did not bar Arde's entry into the MAAC with plaintiff because the MAAC does not modify or alter the terms of the CBA, and the CBA's grievance-and-arbitration provision is otherwise inapplicable to the statutory discrimination claims under the NJLAD asserted in plaintiff's complaint. Plaintiff concedes the CBA's grievance-and-arbitration provisions "do not require arbitration for the statutory claims at issue in this case."

---

[2]  As noted, the MAAC requires the arbitration of claims before Judicial Arbitration and Mediation Services and the CBA requires arbitration before the American Arbitration Association.

A-0080-23

In a written decision following argument on defendant's motion, the court assessed the validity of the MAAC under the standard established in <u>Atalese v. U.S. Legal Servs. Grp., LP</u>, 219 N.J. 430 (2014), for a valid agreement waiving a right to a jury trial and requiring arbitration of statutory claims under the NJLAD. The motion court reasoned that because, in its view, the MAAC satisfied the <u>Atalese</u> standard and the CBA did not, the CBA did not require arbitration of plaintiff's NJLAD claims and the MAAC required arbitration of the asserted NJLAD claims. Based on that reasoning, the court found no conflict between the MAAC and the CBA and concluded plaintiff was required to arbitrate his NJLAD claims in accordance with the MAAC.

The court entered an order staying the proceedings in the Law Division action and compelling arbitration of plaintiff's NJLAD claims in accordance with the MAAC. We granted plaintiff's motion for leave to appeal from the court's order.

## II.

Prior to addressing plaintiff's arguments challenging the court's order, we summarize the principles that guide our analysis. "We review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law." <u>Santana v.</u>

A-0080-23

SmileDirectClub, LLC, 475 N.J. Super. 279, 285 (App. Div. 2023) (citing Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020)). We therefore "need not give deference to the [legal] analysis by the trial court." Ibid. (alteration in original) (quoting Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019)). In our review of an order compelling arbitration, we "construe the arbitration provision with fresh eyes." Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016).

We do not review a court's reasoning; we review only the trial court's judgment or order. Bandler v. Melillo, 443 N.J. Super. 203, 210 (App. Div. 2015). In our analysis of plaintiff's arguments on appeal, we therefore consider "only the propriety of the [order] entered by the trial court, not the reasoning underlying the court's decision." Ibid. (citing Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)). We apply these standards here.

"The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, and the nearly identical New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, enunciate federal and state policies favoring arbitration." Atalese, 219 N.J. at 440. Pursuant to the FAA, courts must "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." Id. at 441 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)).

In reviewing orders compelling arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013); see also Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 133 (2020) (explaining "the affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes" (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002))). Arbitration, as a favored means for dispute resolution, is not, however "without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., PA, 168 N.J. 124, 132 (2001).

"Arbitration's favored status does not mean that every arbitration clause, however phrased, will be enforceable." Atalese, 219 N.J. at 441 (citing Hirsch, 215 N.J. at 187). Thus, the fact that the MAAC's provisions otherwise satisfy the standards for plainly stated waiver of a jury trial and agreement to arbitrate under Atalese does not end the inquiry. A legally enforceable arbitration agreement "requires 'a meeting of the minds,'" id. at 442 (quoting Morton v. 4 Orchard Land Tr., 180 N.J. 118, 120 (2004)), and the effective waiver of a party's right to a jury trial "requires [the] party to have full knowledge of [their] legal rights and intent to surrender [that] right," ibid. (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)). "Moreover, because arbitration involves a waiver of

the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" Id. at 442-43 (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 425 (App. Div. 2011)).

"An arbitration agreement must be the result of the parties' mutual assent, according to customary principles of state contract law." Skuse, 244 N.J. at 48 (citing Atalese, 219 N.J. at 442). The mutual assent necessary for a valid arbitration agreement "requires that the parties have an understanding of the terms to which they have agreed. 'An effective waiver'" of an individual's right to pursue a claim in a judicial forum "'requires a party to have full knowledge of his [or her] legal rights and intent to surrender those rights.'" Atalese, 219 N.J. at 442 (quoting Knorr, 178 N.J. at 177). And, "under New Jersey law, any contractual 'waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously' to its terms." Id. at 443 (alteration in original) (quoting Leodori v. CIGNA Corp., 175 N.J. 293, 302 (2003)); see also Martindale, 173 N.J. at 96 (enforcing an arbitration agreement because, among other things, it "was clear and unambiguous").

A-0080-23

Defendants' motion to stay plaintiff's lawsuit and compel arbitration is founded on the MAAC, which plainly provides that plaintiff waives his right to a jury trial and agrees to arbitrate any state statutory claims he may have against Arde. Plaintiff does not dispute that on its face, the MAAC includes a waiver of his right to a jury trial on the NJLAD claims asserted in the complaint and an agreement to arbitrate those claims that satisfies the requirements explained by the Court in Atalese. See Atalese, 219 N.J. at 443 ("[U]nder New Jersey law, any contractual 'waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously' to its terms." (second alteration in original) (quoting Leodori, 175 N.J. at 302)); see also Drinker Biddle & Reath LLP v. N.J. Dep't of L. & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (explaining an issue not briefed on appeal is deemed abandoned).

Before the motion court, and on appeal, plaintiff's challenge to the MAAC's enforceability is based on his claim that following his execution to the MAAC and employment by Arde, he became a member of the collective bargaining unit represented by the Union and was therefore subject to the terms of the CBA. He contends the MAAC conflicts with the CBA and therefore the MAAC does not constitute the clear and unambiguous waiver of his right to a jury trial on his NJLAD claims and agreement to arbitrate that is required by

13

Atalese. 219 N.J. at 442-43. He also argues the MAAC is unenforceable because the Union had exclusive authority to negotiate over the arbitrability of plaintiff's employment-related statutory discrimination claims under the United States Supreme Court's decision in 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009).

We reject plaintiff's arguments because they are founded on a premise—that the MAAC and CBA conflict in such a manner as to render the MAAC unenforceable—that is undermined by the plain language of the two agreements. In short, the MAAC and the CBA do not conflict in any manner of consequence to the plainly stated waiver of plaintiff's right to a jury trial and agreement to arbitrate his state statutory NJLAD causes of action set forth in the MAAC.

To be sure, and as plaintiff argues, there are differences between the dispute resolution procedures in the CBA and the MAAC. The CBA provides for the arbitration of contractual grievances before the American Arbitration Association and the MAAC requires arbitration of arbitrable disputes—including claims arising under state statutes—under the agreement before Judicial Arbitration and Mediation Services.

The differences between those procedures are of no consequence to the validity of plaintiff's waiver of his right to a jury trial and agreement to arbitrate

14

his NJLAD claims for the simple but dispositive reason that the statutory claims asserted in the complaint are separate from, and independent of, any contractual rights that exist under the CBA. Stated differently, plaintiff could not prosecute his state statutory claims under the grievance procedure in the CBA because any claimed violation of the NJLAD, like those asserted in plaintiff's Law Division complaint, do not constitute cognizable grievances subject to the CBA's grievance-and-arbitration procedure. This is undisputed. Plaintiff acknowledges and concedes that neither he nor the Union could prosecute his statutory NJLAD claims in the CBA's grievance-and-arbitration procedure. For those reasons, any putative conflict between the dispute resolution procedures in the MAAC and CBA are of no moment in the assessment of the validity of the MAAC because the CBA does not apply to those claims.

In Thornton v. Potamkin Chevrolet, the Court considered whether a union employee who had failed to raise a statutory racial discrimination claim in a grievance arbitration proceeding under a collective bargaining agreement could also pursue the claim in a separate proceeding alleging racial discrimination under the NJLAD before the New Jersey Division on Civil Rights (DCR). 94 N.J. 1, 3-4 (1983). The Court found the "[t]he public interest in enforcement of the [NJLAD]" required the rejection of the defendant's claim the entire

15

controversy doctrine should preclude the plaintiff's prosecution of the discrimination claim before the DCR.  Id. at 6.

In support of its determination, the Court found "an important analogy in" the United States Supreme Court's decision in Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), "which held that a proceeding to enforce a discrimination claim under Title VII of the Civil Rights Act of 1964 would not be foreclosed by a previous unsuccessful labor arbitration of a claim" pursuant to the grievance procedure in a collective bargaining agreement.  Thornton, 94 N.J. at 6.  The Court in Thornton, quoting the reasoning in Alexander, explained that "the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance arbitration clause of a collective-bargaining agreement and his cause of action under Title VII."  Ibid. (quoting Alexander, 415 U.S. at 59-60).

The Court further cited Alexander's reasoning that the plaintiff "by submitting his grievance to arbitration . . . agrees to arbitrate only his contractual rights under the collective bargaining agreement" but "[i]n a Title VII proceeding he asserts statutory rights guaranteed to him by Congress."  Id. at 7 (emphasis omitted).  And the Court noted that Alexander made a distinction

16

A-0080-23

between the plaintiff's right to pursue his statutory discrimination claims under Title VII and his assertion of contractual rights in the arbitration that had been filed under the union contract, explaining "the relationship between the forums is complementary since consideration of the claim by both forums may promote the policies underlying each." Ibid. (quoting Alexander, 415 U.S. at 50-51).

In Thornton, the Court concluded that "complementary jurisdiction" over employment-related claims under a collective bargaining agreement grievance procedure and in an available forum for claims asserted under the NJLAD permitted disposition of such claims in both forums. Id. at 7-8. That is, the Court recognized that an employee may assert NJLAD claims in a forum permitted under the statute and separately pursue discrimination claims as permitted under a collective bargaining agreement in a grievance-and-arbitration proceeding.[3] Id. at 8; see also Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 411 (1988) (explaining the United States Supreme Court

---

[3] We observe that an employee's common law state tort claims and state statutory claims are preempted under Section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a), and under Section 7 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157, where the state statutory claim is dependent on the meaning of a collective bargaining agreement, see generally Puglia v. Elk Pipeline, Inc., 226 N.J. 258 (2016) (addressing preemption of the plaintiffs' state statutory retaliatory discharge claim under the LMRA and NLRA). As alleged in plaintiff's complaint, his NJLAD claims are not dependent in whole or in part on the CBA.

A-0080-23

"has, on numerous occasions, declined to hold that individual employees are, because of the availability of arbitration" under a collective bargaining agreement, "barred from bringing claims under federal statutes" (quoting Atchinson, T. &. S. F. R. Co. v. Buell, 480 U.S. 557, 564-65 (1987))); see also Puglia, 226 N.J. at 264 (explaining "New Jersey has a significant body of statutory and decisional law protecting employee rights—protections that exist whether the employee is a union member or not").

Plaintiff's claim that the MAAC is unenforceable because there is a conflict between the arbitration procedure set forth in the CBA and the one prescribed in the MAAC ignores that the separate proceedings—plaintiff's prosecution of his statutory claims and the Union's right to file grievances under the CBA—are complementary, address wholly different issues, and are intended to vindicate separate interests. Alexander, 415 U.S. at 50-51; Thornton, 94 N.J. at 7; see also Puglia, 226 N.J. at 285-96 (explaining a union employee's state statutory claim under the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14, that is not preempted under the LMRA or NLRA may proceed in state court independently of the requirements of a collective bargaining agreement).

A-0080-23

Here, as plaintiff concedes, the CBA does not permit or require resolution of his state statutory claim under the NJLAD in the agreement's grievance-and-arbitration procedure. Therefore, there is no complementary jurisdiction to consider because neither plaintiff nor the Union could assert state statutory claims under the CBA. Because plaintiff's NJLAD claims are not, by definition, grievances subject to the grievance-and-arbitration provisions of the CBA, the NJLAD provided the exclusive means by which plaintiff could prosecute his individual state statutory claims against Arde.

The NJLAD "provides aggrieved employees with a choice of forum to prosecute their claims." Garfinkel, 168 N.J. at 130. Employees "may pursue an administrative remedy by filing a verified complaint with the [DCR], or may file suit in the Law Division of the Superior Court." Ibid. (citing N.J.S.A. 10:5-13). In exercising their rights under the NJLAD, aggrieved employees may also enter into enforceable agreements with their employers to waive their right to a jury trial and proceed to binding arbitration of their NJLAD claims. Id. at 130-36.

We recognize a union may negotiate on behalf of its members an obligation to arbitrate statutory claims under a collective bargain agreement as long as the obligation is "explicitly stated" in the agreement, 14 Penn Plaza LLC, 556 U.S. at 258 (quoting Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 80

19

(1998)). But the Union opted not to negotiate such a requirement with Arde here and therefore left plaintiff to pursue his individual statutory claims on his own under the NJLAD. See Alexander, 415 U.S. at 50-51; Thornton, 94 N.J. at 7; see also Puglia, 226 N.J. at 285-96.

Given those circumstances, and because it is undisputed plaintiff had an independent and personal right to prosecute his NJLAD claims, we discern no basis to conclude he could not separately agree to prosecute those claims—which he agrees cannot be prosecuted under the CBA's grievance-and-arbitration procedure—in a forum and following a procedure different than the one Arde and the Union agreed to for the disposition of grievances under the CBA, to which only they are parties. For those reasons, we reject plaintiff's claim that because the procedure for the resolution of disputes in the CBA is different than the arbitration procedure in the MAAC, it results in a conflict that renders the MAAC ambiguous and therefore unenforceable. As the Court explained in LePore v. National Tool & Manufacturing Co., 115 N.J. 226, 228 (1989), "[t]he fact that plaintiff was covered by a collective-bargaining agreement . . . should not preclude a cause of action predicated on an independent basis," and "a suit based on an independent state cause of action does not undermine a collective-bargaining agreement."

A-0080-23

Contrary to plaintiff's contention, our decisions in Rockel v. Cherry Hill Dodge, 368 N.J. Super. 577 (App. Div. 2004), and Foulke Management, 421 N.J. Super. at 409-11, 431-38, do not require a different result. In Rockel, we found a putative arbitration agreement was "highly ambiguous" and therefore unenforceable because the parties to the agreement had "executed two documents which contain[ed] separate and somewhat disparate arbitration clauses." 368 N.J. Super. at 581. There is no similar circumstance extant here. Plaintiff and Arde were parties to one agreement—the MAAC—which plaintiff recognizes clearly and unambiguously states that he waives his personal right to a jury trial and agreed to arbitrate his statutory NJLAD claims.

Similarly, in Foulke Management, we found unenforceable an alleged agreement that a car dealership claimed required arbitration of the plaintiff's claims arising out of the purchase of a new car. 421 N.J. Super. at 409-11. We found the terms of the claimed arbitration agreement had been spread across a series of separate documents signed by the plaintiff in connection with a car purchase and that, in many respects, the various documents described aspects of the alleged arbitration obligation in different and inconsistent, and in "[e]qually murky and conflicting" ways. Id. at 431-37. For those reasons, we determined

21

there was a lack of mutual assent to the terms of the arbitration obligation and found the putative agreement unenforceable on that basis. Id. at 438.

Again, the circumstances here differ from those in Foulke Management. Arde and plaintiff entered into a single agreement—the MAAC—that plainly and unambiguously states plaintiff waived his right to a jury trial on his statutory claims and agreed to arbitrate those claims. And, as we have explained, plaintiff was not a party to the CBA and he concedes that CBA does not permit or require that he prosecute his NJLAD claim in the CBA's grievance-and-arbitration procedure. As such, there is no ambiguity in plaintiff's contractual obligations as set forth in the MAAC; he waived his right to jury trial and agreed to prosecute his individual statutory NJLAD claims—that he no right or obligation to prosecute under the CBA—in arbitration.

Arde was free to enter into an agreement—the MAAC—with plaintiff as long as it did not conflict with the CBA. J.I. Case Co. v. NLRB, 321 U.S. 332, 339 (1944) ("Individual contracts cannot subtract from collective ones"); Mount Holly Twp. Bd. of Educ. v. Mount Holly Twp. Educ. Ass'n, 199 N.J. 319, 322 (2009) (reaffirming that "when provisions in an individual employment contract conflict with the terms of a" collective bargaining agreement, "and diminish or interfere with rights provided by the" agreement, "the language in the individual

22

contract must yield to the collective agreement"). Our Supreme Court has recognized "the federal labor principle that individual contracts" with members of a collective bargaining unit "are void only to the extent that they conflict with collective [bargaining] agreements or interfere with the principles of collective negotiation." Troy v. Rutgers, 168 N.J. 354, 375-76 (2001); see also Caterpillar Inc. v. Williams, 482 U.S. 386, 396 (1987) (explaining an employee "covered by a collective-bargaining agreement is permitted to assert legal rights independent of that agreement, including state-law contract rights, so long as the contract relied on is not a collective-bargaining agreement" (emphasis omitted)).

For the reasons we have explained, there is no conflict between the MAAC and the CBA pertinent to the disposition of plaintiff's statutory NJLAD claims, and the MAAC did not diminish any rights to prosecute the claims under the CBA. The CBA negotiated by the Union did not permit or require the prosecution of statutory claims under the grievance-and-arbitration agreement and, as result, those claims were reserved by the Union's agreement with Arde as individual statutory claims that plaintiff was permitted to prosecute individually and independent of the CBA.

A-0080-23

Contrary to plaintiff's contention, Article 20 of the CBA did not prohibit Arde's entry into the MAAC with plaintiff. Article 20, titled "ALTERATION OF AGREEMENT," prohibits Arde's entry into separate agreements with members of the collective bargaining unit that alter, modify, or vary the "terms and conditions" of the CBA. The MAAC does none of those things. Again, the CBA negotiated by the Union allows bargaining unit employees to individually prosecute their NJLAD claims and, here, plaintiff opted to prosecute his NJLAD claims by agreeing to waive his right to a jury trial and arbitrate his claims in an agreement—the MAAC—that fully comports with the Atalese standard. The MAAC is therefore in full accord with the CBA negotiated by the Union.

To the extent we have not expressly addressed any of plaintiff's remaining arguments, we find they are without sufficient merit to warrant discussion in a written opinion.[4] R. 2:11-3(e)(1)(E).

_____

[4] Plaintiff argues for the first time in his reply brief that the Union had the exclusive authority under the NLRA, as the collective bargaining representative of Arde's employees, to negotiate the terms and conditions of plaintiff's exercise of his right to prosecute his individual statutory claims, and that the MAAC is unenforceable as a matter of law because it violated the NLRA. See generally Mendez v. Starwood Hotels & Resorts Worldwide, Inc., 346 F. App'x 602 (2d Cir. 2009). We do not address the argument because it is improper to for a party to use a reply brief to raise an issue for the first time or enlarge the arguments made in its initial brief. L.J. Zucca, Inc. v. Allen Bros. Wholesale Distribs. Inc., 434 N.J. Super. 60, 87 (App. Div. 2014). We note only that plaintiff's reliance

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

on <u>Mendez</u> is misplaced because the court there did not consider that the plaintiff's filing of the statutory discrimination claim constituted the exercise of the plaintiff's independent right to pursue their individual cause of action against their former employer. <u>See, e.g.</u>, <u>Alexander</u>, 415 U.S. at 50-51; <u>Puglia</u>, 226 N.J. at 285-96; <u>LePore</u>, 115 N.J. at 227-28; <u>Thornton</u>, 94 N.J. at 7.

25